(160 App. Div. 144)

PEOPLE ex rel. WESTERN UNION TELEGRAPH CO. v. PUBLIC SERVICE COMMISSION FOR SECOND DIST. et al.

(Supreme Court, Appellate Division, Third Department.    January 14, 1914.)

TELEGRAPHS AND TELEPHONES (§ 33*)—REGULATION BY PUBLIC SERVICE COMMISSION—ORDERS—EVASION.

The P. telegraph company complained to the Public Service Commission as to the W. telegraph company charging, on messages transferred to its lines for transmission to points where the P. company had no office, for the words "via" and the name of the transfer point. The W. company contended that the charge was for the original address and date line, and was ordered by the Commission to discontinue exacting such charge where no charge. was made for the originating address and date on messages originating at the point of transfer. The W. company, without seeking a review of such order, discontinued such charge, but thereafter made an extra charge for the word "via" and the name of the transfer point, which names it claimed were necessary for the purpose of its accounting system.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held,* that it was the practice of charging for extra words on transferred messages which was condemned by the original order, which, having been acquiesced in, could not be reversed, and, as the W. company was attempting to accomplish indirectly what could not be done directly under that order, the Commission properly, on a subsequent complaint, directed the discontinuance of the extra charge for the words "via" and the name of the transfer point.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 33.*]

Smith, P. J., and Lyon, J., dissenting.

Original certiorari proceeding by the People, on relation of the Western Union Telegraph Company, against the Public Service Commission of the State of New York for the Second District and another. Writ dismissed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Rush Taggart, of New York City, for relator.

Ledyard P. Hale, of Albany, for Public Service Commission.

William W. Cook and Ralph H. Overbaugh, both of New York City, for Postal Telegraph Cable Co.

WOODWARD, J. We have before us a writ of certiorari to review a final order of the Public Service Commission of the Second District, and because the questions involved have been so elaborately discussed as to largely obscure the real merits of the controversy, it seems necessary to set out the order in full that we may understand just what is being passed upon and what is involved in the determination. The body of the order is as follows:

"It appears from the complaint and answer herein and the evidence taken at the hearing that the Postal Telegraph Cable Company receives messages at competitive points for points at which it has no office, but at which the Western Union Telegraph Company has offices; that the Postal Telegraph Cable Company transmits the said messages so received to one of its own offices nearest to the point of delivery, and at such office transfers the messages to the Western Union Telegraph Company and pays, for the transmission of such messages from the point of delivery to the point of address, the regular local rate of the Western Union Telegraph Company for messages between the point at which it receives the message and the point at which it is delivered.

"It further appears that the Western Union Telegraph Company, in charging for the transmission of such transferred messages, charges the regular or local rates between the point of transfer and the point of delivery, and in addition thereto charges a further sum for the word 'via' and the name of the place where the message was delivered to the Western Union Telegraph Company for further transmission.

"This Commission entered an order on the 8th day of November, 1911, after considering a complaint from the Postal Telegraph Cable Company, in which order the Commission directed the Western Union Telegraph Company to desist from the practice of exacting a charge from the Postal Telegraph Cable Company for the originating address and date upon such transferred telegrams in all cases where no charge is made for the originating address and dates upon telegrams delivered to said Western Union Telegraph Company originating at the point of transfer. The Commission issued a further order in that case on the 15th day of January, 1912, in which it denied the application of the Western Union Telegraph Company for a rehearing therein. It appears to the Commission that the same reasoning by which it determined that the

---

charge exacted in that case was unjust, unreasonable, and unduly discrimina-
tory now obtains concerning the present practice, and that respondent's con-
tention that the charge for a message delivered to it by the complainant for
the transfer is on the same basis as a charge for forwarding a message is not
sustained.

"Now therefore, ordered: (1) That the charge made by the Western Union
Telegraph Company to the Postal Telegraph Cable Company for the word 'via'
and the name of the place where the message was delivered to the Western
Union Telegraph Company for further transmission is unjust, unreasonable,
and unduly discriminatory, and that the said Western Union Telegraph Com-
pany be and it hereby is required to desist from the practice of exacting said
charge from the said Postal Telegraph Cable Company, in all cases where no
charge is made for the originating address and date upon telegrams delivered
to said Western Union Telegraph Company originating at the point of trans-
fer. Ordered (2) that this order shall become effective on the 1st day of
March, 1913, and that the respondent, Western Union Telegraph Company,
shall notify this Commission on or before the 17th day of February, 1913,
whether or not the terms of this order are to be accepted and obeyed."

The above is the only order we have anything to do with upon this
review, although it seems necessary to an understanding of the ques-
tions involved to refer to the previous order. The original proceed-
ing was instituted for the purpose of bringing up the very question
now under consideration, but the result of the trial of the issues, after
a reopening of the case, was that the Western Union Telegraph Com-
pany contended that its charge at transfer points was for the original
address and date line, and that this was an added burden which it
was required to carry for the Postal Company. For instance, if a
message was started from Buffalo over the Postal Company's lines
and was sent to Rochester and there transferred to the Western Union
Company to be delivered at a point where there was no Postal Com-
pany office, the Western Union would forward the message and charge
the Postal Company for the words, "Buffalo, N. Y., Sept. 5," in addi-
tion to the words contained in the body of the message. This prac-
tice was condemned by the order of the Commission of November 8,
1911, and subsequently the Western Union Telegraph Company chang-
ed its rule 8 so that it provided in a case as above supposed that there
should be an extra charge for the words "via Rochester, N. Y." It
is conceded that it is necessary in the transferring of a message from
one line to another, for the purpose of the transmitting company's ac-
counting system, to indicate the transfer point by the words "via
Rochester," but it is strongly urged that the telegraphic word "N. Y."
is not necessary, though this latter point is of no practical consequence
in the determination of the law of this case. It is entirely obvious
that the practical result of this change of rules was not to materially
change the practice, though it did operate to cut down to some extent
the number of extra words, for under the new rule there could be only
three extra words, while in the other there might be the words "Buf-
falo, N. Y., September 15," which in telegraph practice would amount
to five words, but, broadly speaking, it was the practice of charging
for extra words which was condemned by the original order, and not
the particular rule of the Western Union Telegraph Company under
which the practice was carried on. The changing of the rule by the
Western Union Telegraph Company so as to charge for the words

inserted in the telegram for its own accounting system, instead of the date line of the place where the message originated, is an effort to accomplish indirectly what could not be done directly, and this practice is universally condemned by the adjudications. Matter of Henneberger, 25 App. Div. 164, 169, 49 N. Y. Supp. 230, affirmed 155 N. Y. 420, 50 N. E. 61, 42 L. R. A. 132. There was no effort to review the original determination of the Public Service Commission beyond making an application for a rehearing, which was denied. That order stands to-day. It commands the Western Union Telegraph Company to desist from the practice of exacting a charge from the Postal Telegraph Cable Company for the originating address and date upon such transferred telegrams in all cases where no charge is made for the originating address and dates upon telegrams delivered to said Western Union Telegraph Company originating at the point of transfer. It appears to have been the original contention of the Western Union Telegraph Company that the words charged for were the words added at the point of transfer, but this contention was dropped during the progress of the hearing. The matter was, however, before the Commission; it understood, in disposing of the case, the practice of adding the words "via Rochester, N. Y.," and the adjudication must be held to have been in reference to the transfer of messages as practiced by the Western Union Telegraph Company, and to have held that it was not proper to make a charge for any extra words, whether they be designated as address and date or as "via Rochester," etc. The messages then under consideration were of the same character as those which were before the Commission on the subsequent proceeding, and it is merely quibbling to say that by a mere change in the rules of the Western Union Telegraph Company the latter can be permitted to accomplish the practical nullification of the adjudication. In other words, this court cannot review the present order and reverse the determination without in effect reversing the original order, and as to such order the relator has already acquiesced in the determination. The principle has been established that the Western Union Telegraph Company is not to be permitted to make a charge for extra words contained in a transfer message at the point of transfer as against the Postal Telegraph Cable Company, and whether those words are the original address and date, or the other words added for the use of the company's accounting department, can make no difference in the principle involved; the adjudication dealt with the practice as it was carried on at the time, and this practice was not changed in principle at the time of the order now under review.

The writ of certiorari should be dismissed, with costs. All concur except SMITH, P. J., dissenting in opinion in which LYON, J., concurs.

SMITH, P. J. (dissenting). The result of this order is to compel the Western Union to transmit, for the Postal Telegraph Company, for the same price as would be charged an individual, a telegram containing necessarily by concession three additional words. Instead of forbidding discrimination it compels discrimination in favor of a rival

line in a matter in which the public has not the slightest interest. I see no justification for the order. Upon a prior application the relator was forbidden by the Public Service Commission to charge for the originating address in a telegram transferred, which was then its custom, instead of charging for what were in fact the extra words "via Rochester, N. Y." for which no charge was then made. No appeal was taken from that order of the Public Service Commission, which fact is deemed by Justice WOODWARD as such an acquiescence in the order made as gives to the order the effect of an adjudication binding on relator. I cannot follow this reasoning. The order forbade the charging for "originating address" which was not charged to individuals in telegrams sent from the point of transfer, and which custom was technically a discrimination. The relator might well have thought wise to avoid that technical discrimination before asserting its rights in the court. The rule of the company was therefore changed so as not to charge extra for the originating address, but to charge extra for the extra words made necessary by the transfer. If the transfer be made at the original address, no extra words were necessary, and no extra charge made. If the message originated at a point where the relator had no office and the transfer was made at the nearest point where the relator had an office, no extra words were necessary, and none charged for. The public pays nothing extra, and it is a new function for the Public Service Commission to aid a rival company which has limited facilities by compelling relator to give to that company all the advantages which belong to the relator from having extended its lines to many more points than are covered by the complainant. I think the order should be reversed.